**In re Paul C. SHURTLEFF, Joyce E. Shurtleff, Debtors.**

**Bankruptcy No. 93–63595.**

United States Bankruptcy Court, N.D. New York.

July 14, 1994.

W.C. Foulke & Associates (Walter C. Foulke, of counsel), Auburn, NY, for Wesley Carr.

Milton J. Crystal, Syracuse, NY, for debtors.

## MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Chief Judge.

The Court is presented herein with an objection filed by Wesley Carr ("Carr") pursuant to Rule 4003(b) of the Federal Rules of Bankruptcy Procedure ("Fed.R.Bank.P.") with respect to certain exemptions claimed by Paul C. and Joyce E. Shurtleff ("Debtors"). The Court also considers Carr's motion seeking an order terminating the automatic stay pursuant to § 362(d) of the Bankruptcy Code (11 U.S.C. §§ 101–1330) ("Code"), as well as a motion seeking to have the trustee abandon the property, claimed by the Debtors as exempt, pursuant to Code § 554(b).

The matter was first heard at a regular motion term of the Court at Syracuse, New York, on March 1, 1994, and was adjourned with the consent of all parties to March 22, 1994, to allow them an opportunity to submit memoranda of law. The matter was submitted for decision on the latter date.

### JURISDICTIONAL STATEMENT

The Court has jurisdiction of these contested matters pursuant to 28 U.S.C. §§ 1334(b), 157(a), (b)(1) and (2)(B) and (G).

### FACTS

A judgment in favor of Carr was entered against the Debtors on March 5, 1990, in an action in New York State Supreme Court, County of Cayuga, in the amount of $17,-338.92. Executions with Notice to Garnishees ("Executions") were delivered to the Onondaga County Sheriff's Office on or about October 25, 1993. The Executions were served by the Sheriff on OnBank & Trust Co. ("OnBank") and Dairylea Cooperative ("Dairylea") (hereinafter referred to jointly as "Garnishees") on or about October 26, 1993.

The Executions levied upon a checking account of the Debtors at OnBank in the amount of $1,157.00 and upon milk checks owed by Dairylea to the Debtors in the amount of $536.80 for October, 1993, and an undetermined amount for November 1993 ("Accounts"). OnBank is presently holding the monies in the checking account and has refused to release the funds to either the trustee, Carr or the Debtors pending a determination by this Court. *See* Exhibit "B" of Carr's Motion Papers. According to the affidavit of Debtors' Counsel, the monies in the Dairylea account have been released to the Debtors.

On December 3, 1993, the Debtors filed a joint voluntary petition ("Petition") seeking relief pursuant to Chapter 7 of the Code. Schedule C of the Petition lists the Accounts as exempt property claimed by the Debtors.

### ARGUMENTS

Relying on *DiFlorio v. United States*, 30 B.R. 815 (N.D.N.Y.1983), Carr contends that the Debtors are not entitled to claim an exemption in the monies held by the Garnishees because they do not constitute property of the estate. It is Carr's contention that the Executions served by the Sheriff on the Garnishees prior to the Debtors' filing their Petition created a lien on both Accounts and displaced the Debtors' interest in the Accounts in favor of Carr. Accordingly, Carr is seeking an order terminating the automatic stay and directing that OnBank and Dairylea release the monies in the Accounts to his attorney. Carr is also seeking to have the Court issue an order directing the trustee to abandon any interest he might have in the Accounts based on his having allegedly filed a no asset report with the United States Trustee's office.

The Debtors have responded by asserting that the monies in the Accounts are exempt from judgment execution. Specifically, they contend that the monies in the OnBank account consist of worker's compensation payments to Debtor Paul Shurtleff and wages of Debtor Joyce Shurtleff earned within 60 days of the Executions, and the monies in the Dairylea account consist of milk proceeds. To the extent that Carr's liens impair their exemptions, Debtors argue that the liens should be vacated. Debtors' counsel distinguishes *DiFlorio* by pointing out to the Court that the debtor in *DiFlorio* was a corporation and, therefore, not entitled to claim personal exemptions.

The Debtors also argue that if valid liens were created upon the issuance of the Executions, such liens would have been subject to attack by the trustee as voidable transfers made within 90 days before the date of the filing of the Petition pursuant to Code § 547. The fact that the trustee commenced no such adversary proceeding, Debtors contend, supports the validity of their claim for exemptions. The Debtors reason that the trustee had no reason to avoid the liens as preferences since he allegedly accepted the Debtors' claim to the Accounts as exempt property.[1]

### DISCUSSION

Pursuant to Code § 541(a)(1), property of the estate is comprised of all legal or equitable interests of the debtor in property as of the commencement of the case. Code § 522 authorizes an individual debtor to exempt from property of the estate certain assets. In order for the Debtors in the matter *sub judice* to be able to exempt the monies in the Accounts, the Court must make an initial determination whether the Debtors had any interest in the Accounts at the time they filed their Petition on December 3, 1993.

Carr obtained a money judgment on March 5, 1990, in the amount of $17,338.92, against the Debtors. Pursuant to § 5230(b) of the New York Civil Practice Law and Rules ("NYCPLR"), an execution of a judgment may be issued by the attorney for the judgment creditor to the sheriff. The record indicates that Carr's attorney delivered the Executions with Notice to Garnishee to the Onondaga County Sheriff's Office ("Sheriff") on or about October 25, 1993. Under New

---

1. The Debtors retain the right to commence an adversary proceeding pursuant to Code § 522(h) to avoid the liens as a preferential transfers pur- suant to Code § 547 based on the trustee's fail- ure to do so.

York law, the judgment became a lien on the Debtors' interest in the Accounts on October 25, 1993, when the Executions were delivered to the Sheriff. *See In re Syed Indus. Corp.*, 58 B.R. 920, 922 (Bankr.E.D.N.Y.1986) (citations omitted).

■ Any interest the Debtors might have in the Accounts is determined by taking into consideration any interests other parties may have in the Accounts which may *not* be avoided under Code § 522(f). *In re Walls*, 125 B.R. 908, 910 (Bankr.D.Del.1991) (citation omitted). That appears to have been the case in *DiFlorio* where the court was asked to determine whether the IRS' levy displaced the debtor's interest in a checking account. The IRS' lien far exceeded the amount in the checking account, and the debtor was determined to have no equitable interest in it. The court concluded that the monies in the checking account were not property of the debtor at the time the petition was filed. *DiFlorio, supra,* 30 B.R. at 818.

■ *DiFlorio* is to be distinguished from the case presently before the Court in that it involved a Federal tax lien, filed pursuant to 26 U.S.C. § 6323(f), which is an unavoidable lien. *See In re Bovay*, 112 B.R. 503, 504, n. 3 (Bankr.N.D.N.Y.1989). Carr's liens on the Accounts, on the other hand, are judicial liens which may be avoided pursuant to Code § 522(f)(1) to the extent that it is determined that they impair an exemption to which the Debtors are entitled. Pursuant to Code § 522(f), the Debtors have the ability to create an interest by lien avoidance to preserve the exemptions they have claimed. *See generally Alu v. State of New York Dep't of Taxation and Finance,* 41 B.R. 955, 957 (E.D.N.Y.1984) ("It is not necessary for a debtor to have equity in property in order to have an 'interest' in such property within the meaning of 11 U.S.C. § 522(f). Indeed, the aim of 11 U.S.C. § 522(f), at least in part, is to enable a debtor to *create* equity which otherwise might not exist, by avoiding certain liens." (citations omitted)); *see also Bovay, supra,* 112 B.R. at 505 (this Court acknowledges that while a debtor may create equity in property by avoiding certain liens, the existence of unavoidable liens in excess of the property's value prohibited Bovay's use of Code § 522(f).)

■ The Court concludes that the Accounts are presently subject to Carr's lien. The Accounts do not become property of the estate simply because the Debtors have exempted them. *See In re Gibbs,* 39 B.R. 214, 215 (Bankr.W.D.Ky.1984). However, the Court concludes that the Debtors, having claimed the Accounts as exempt in their Petition, should have an opportunity to create an interest in the Accounts and avoid Carr's judgment lien pursuant to either Code § 522(f) or Code § 522(h). Accordingly, the Debtors shall have a reasonable time from the date of this Order to assert their rights pursuant to the foregoing sections of the Code. In the event that the Debtors fail to create an interest in the Accounts, by avoiding Carr's judgment lien, Carr is granted leave by the Court to renew its motions to obtain relief from the automatic stay pursuant to Code § 362(d) and also to have the trustee abandon the Accounts pursuant to Code § 554(b).

For the foregoing reasons, it is

ORDERED that Carr's objection to the Debtors' claim of exemptions in the Accounts pursuant to Fed.R.Bankr.P. 4003(b) based on the assertion that the Debtors have no interest in the Accounts is denied; it is further

ORDERED that Debtors shall, within thirty (30) days from the entry of this Order, file and serve a motion pursuant to Code § 522(f) or commence an adversary proceeding pursuant to Code §§ 522(h) and 547; and it is further

ORDERED that Carr's motion seeking relief from the automatic stay pursuant to Code § 362(d) with respect to the Accounts is denied without prejudice; and it is further

ORDERED that Carr's motion seeking to have the trustee abandon his interest in the Accounts is denied without prejudice.